IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | NO. CR-07-238-D |
| ) | |
| BEAU TRAVIS RIVERS, ) | |
| ) | |
| Defendant. ) | |

## **O R D E R  A N D  J U D G M E N T**

I. Background:

On March 18, 2008 the Court conducted a non-jury trial on Count 3 of the Indictment filed in this action on September 5, 2007. Count 3 is directed only at Defendant Beau Travis Rivers[1], and charges him with possessing firearms after having been convicted of a felony, a violation of 18 U. S. C. § 922(g)(1). Specifically, Count 3 of the Indictment alleges that:

> On or about January 10, 2007, in Oklahoma City, Oklahoma, in the Western District of Oklahoma,
>
> BEAU RIVERS,
>
> having been previously convicted of a crime punishable by a term of imprisonment exceeding one year, knowingly possessed firearms, to wit:
>   1) A Remington Model 700, .25-06 caliber rifle, Serial Number S6336124[2]; and
>   2) A Ruger Model M77 rifle, .308 caliber, Serial Number 7855261, which were in and affecting interstate commerce in that said firearms had previously crossed state lines to reach the state of Oklahoma.
>
> All in violation of Title 18, United States Code, Section 922(g)(1), the penalty for which is found in Title 18, United States Code, Section 924(a)(2).

---

[1] *The Indictment names Defendant and two other individuals; Defendant is charged in two of the four counts. He filed a Petition to Enter a Plea of Guilty to Count 2 of the Indictment, which charges him with conspiracy to distribute approximately 4.12 grams of a mixture or substance containing a detectible amount of methamphetamine in violation of 21 U. S. C. § 841(a)(1). Following a hearing, the Court accepted his guilty plea as to Count 2 [Doc. No. 64]. Defendant then requested a non-jury trial on Count 3, and executed a waiver of his right to a trial by jury. The Court conducted a hearing on the motion and the waiver, and granted Defendant's motion for a non-jury trial [Doc. No. 67].*

[2] *During the March 18, 2008 trial, the parties stipulated on the record that the serial number of the Remington rifle was incorrect in the Indictment because of a typographical error, and they agreed that the correct serial number is S6336124. The Indictment was corrected by interlineation.*

Indictment [Doc. No. 1], page 4.

The undisputed evidence establishes that the rifles which are the subject of Count 3 were among the items retrieved during a January 10, 2007 search of a building known as Electric Motor Company, 3701 South Bryant Avenue, in Oklahoma City (the "3701 building" or "3701"). The search was conducted pursuant to a warrant issued by the District Court of Oklahoma County on January 10, 2007. The Return and Inventory[3] reflecting the items seized in the search includes a "Remington rifle Model 700, Serial 36336124 [sic] with scope in case 25-06 caliber" (the "Remington rifle") and a "Ruger rifle Model M77, Serial 7855261 with scope in case .308 caliber." (the "Ruger rifle"). Return and Inventory, Defendant's Exhibit 3.2, Item Nos. 39 and 40. According to the Return and Inventory, both the Remington rifle and the Ruger rifle were found "inside locked wall locker SE corner of shop." *Id.* The undisputed testimony at trial establishes that the "shop" referenced in the Return of Inventory is the 3701 building.

II. The government's burden of proof:

To conclude that Defendant is guilty of the crime proscribed by 18 U.S.C. § 922(g)(1), the Court must find that the government has proved each of the following elements beyond a reasonable doubt: 1) Defendant knowingly possessed a firearm[4]; 2) Defendant was convicted of a felony before he possessed the firearm; and 3) before Defendant possessed the firearm, it had moved at some time in interstate commerce. *United States v. Norman*, 388 F.3d 1337, 1340 (10th Cir. 2004). The parties

---

[3]The Return and Inventory lists forty-nine items retrieved in the search. These include, inter alia, a stolen electric chain hoist, numerous items of drugs and drug paraphernalia, and ammunition. Defendant's Exhibit 3.2. Although Defendant was charged in State court with crimes related to the stolen property and drugs seized in the search, those items are not the subject of the Indictment in this action.

[4]Although the statute prohibits possession of firearms or ammunition, Defendant is not charged with possession of ammunition in this case.

2

have stipulated that, prior to January 10, 2007, Defendant was convicted of a felony; they have further stipulated that the two firearms listed in Count 3 of the Indictment, the Remington rifle and the Ruger rifle "were in and affecting interstate commerce in that said firearms had previously crossed state lines to reach the state of Oklahoma." Stipulations, ¶¶ 1 and 2 [Doc. No. 78]. As a result of the parties' stipulations, the second and third elements of the crime charged are established, and the Court is required to determine only whether the government has met its burden of proof with respect to the remaining element. Thus, the issue before the Court is whether the government has proved beyond a reasonable doubt that Defendant knowingly possessed the firearms in question on or about January 10, 2007, as charged in the Indictment.

III. Applicable legal standards:

The element of "possession" required by § 922(g)(1) may be satisfied by showing either actual or constructive possession. *United States v. Norman*, 388 F.3d 1337, 1340 (10th Cir. 2004), *citing United States v. Mills*, 29 F.3d 545, 549 (10th Cir. 1994). In this case, the government does not contend that Defendant had actual physical possession of the rifles when they were retrieved during the search of the 3701 building. Instead, the government contends that Defendant had constructive possession of the two rifles.

"Constructive possession occurs when a person 'knowingly holds ownership, dominion or control over the object and premises where it is found.'" *Norman*, 388 F.3d at 1340, *quoting United States vs. Lazcano-Villalobos*, 175 F.3d 838, 843 (10th Cir. 1999). If a defendant has "exclusive possession of the premises," knowledge, dominion, and control are inferred; however, "[i]n cases of joint occupancy, where the government seeks to prove constructive possession by circumstantial evidence, it must present evidence to show some connection or nexus between the defendant and

the firearm or other contraband." *Norman,* 388 F.3d at 1340-41, *quoting Mills*, 29 F.3d at 549. The "requisite nexus is established where there is some evidence to support the plausible inference that defendant had knowledge of and access to the firearms." *Lazcano-Villalobos*, 175 F.3d at 843; *United States v. Hien Van Tieu*, 279 F.3d 917, 921 (10th Cir.2002) . "Thus, in the joint occupancy context, 'knowledge and access are required to prove that the defendant knowingly held the power to exercise dominion and control over the firearm.'" *Norman*, 338 F.3d at 1341, *quoting United States v. Colonna*, 360 F.3d 1169, 1179 (10th Cir. 2004). "While caution must be taken that the conviction not be obtained by piling inference on inference, an inference of constructive possession is reasonable if the conclusion flows from logical and probabilistic reasoning." *Colonna*, 360 F.3d at 1179, *quoting Lazcano-Villalobos*, 175 F.3d at 843.

Where a firearm is located in a compartment within jointly occupied premises, the "'mere control or dominion over the place in which contraband or an illegal item is found *by itself* is not enough to establish constructive possession .'" *Mills*, 29 F.3d at 549-550, *quoting United States v. Mergerson*, 4 F.3d 337, 349 (5th Cir.1993), *cert. denied*, 510 U.S. 1198 (1994). In such cases, the government must present sufficient evidence to support "an inference that the defendant was aware of the firearms contained in the compartment and also had a right of physical access to those firearms." *Mills,* 29 F.3d at 550, *citing United States v. Sullivan*, 919 F.2d 1403, 1431 (10th Cir.1990).

Because possession of a firearm after conviction of a felony is a general intent crime, the government need not establish that Defendant possessed a firearm for an improper or illegal purpose; his motive for possessing the weapon is "irrelevant." *United States v. Baker*, 508 F.3d 1321, 1324 (10th Cir. 2007), *citing United States v. DeSoto,* 950 F.2d 626, 632 (10th Cir. 1991). Nor

is the government required to prove that Defendant actually owned the firearm in question or that he intended to exercise his dominion or control over the firearm at issue; "mere possession is enough" if the evidence shows that he has dominion or control by virtue of joint occupancy of the premises, knowledge of the firearm, and access to the firearm.  *Colonna*, 360 F.3d at 1179.

Proof that a defendant "knowingly" possessed a firearm in violation of § 922(g)(1) is established where the evidence shows "proof of knowledge of facts that constitute the possession." *Baker*, 508 F.3d at 1325. "In other words, by prohibiting knowing possession, the statute does not invite inquiry into the reason" the defendant possessed the firearm, as long as the defendant knew it was a firearm. *Id., citing United States v. Adkins*, 196 F.3d 1112, 1115 (10th Cir. 1999) (Section 922(g) imposes criminal liability on a felon in possession of a firearm "unless that felon truly did not know that what he possessed was a firearm.")

a.  Whether Defendant was a joint occupant of the 3701 building :

The initial issue before the Court is whether the government has proved beyond a reasonable doubt that Defendant was a joint occupant of the 3701 building. Defendant argued at trial that Defendant did not have dominion or control over the 3701 building, that the 3701 building was owned and occupied by his father, and that Defendant was the occupant of the building next door at 3709 S. Bryant (the "3709 building" or "3709").

According to the undisputed evidence at trial, Defendant's father, Guy Rivers, operated the Electric Motor Company at 3701 S. Bryant for some time prior to the January 10, 2007 search. However, there was also extensive evidence regarding Defendant's occupancy of the 3701 building and his ability to control and access the building.

The evidence establishes that Defendant reported the 3701 building as his address. Among

the items recovered in the January 10 search were several certificates of title for vehicles owned by Defendant, including a boat, a 1997 motorcycle, and a 2000 truck. The certificates of title were admitted into evidence as Government Exhibits B2.2a, B2.2b, and B2.2c, respectively. In the section showing the "name and address of vehicle owner" on each of the three certificates of tile, Defendant lists his name and shows his address as 3701 S. Bryant Avenue. A fourth certificate of title, for a 1972 Chevrolet Suburban, lists Guy Rivers and Defendant as the owners; their address is listed as 3701 S. Bryant Avenue. Government Exhibit B2.2d.

The evidence also establishes that Defendant was regularly observed on the premises at 3701 prior to January 10, 2007. Oklahoma City Police Sergeants Craig Engles ("Sgt. Engles"), Jim Geery ("Sgt. Geery") and Billy Moon ("Sgt. Moon") each testified that, as a part of their responsibilities with the Santa Fe Impact Unit of the Oklahoma City Police Department ("Santa Fe unit"), they and other officers had conducted surveillance of the 3701 building, the 3709 building, and the surrounding property. The police did so for some time prior to the January 10, 2007 search because the area, including 3701 and 3709, had been the location of prior crimes and arrests, including those involving stolen property and drug activity[5].

According to Sgt. Geery, he had several contacts with Defendant at the 3701 building prior to January 10, 2007. It was Sgt. Geery's understanding that Defendant and his father, Guy Rivers, jointly operated the business at 3701; however, Sgt. Geery has never seen Guy Rivers on the premises at any time. Sgt. Geery also testified that, when he arrived at 3701 on January 10, Defendant was present and told Sgt. Geery that Defendant was in charge of the premises. Although

---

*[5]The three officers also testified that, during their surveillance, they did not observe legitimate business activity. The 3701 building contained electric motors, tools and equipment; the officers believed that, at one time, it had been operated as a legitimate business. However, they testified that they believed the location and surrounding premises were no longer used for the original purpose of electric motor work.*

several other people were present, none of them were employees.

Sgt. Moon testified that he has been assigned to the Santa Fe unit for approximately three years. His first contact with Defendant was in March 2006, and he has been at the 3701 building approximately 50 times since that time; these visits were in connection with investigating stolen property and drug activity. According to Sgt. Moon, he has seen Defendant at 3701 numerous times, and observed him at the front of the building and/or behind the counter immediately inside the entrance to the building. Sgt. Moon did not recall if he had ever seen Guy Rivers in the 3701 building or on the property outside the building.

Sgt. Engles also testified that, in connection with his responsibilities for the Santa Fe unit, he had been engaged in surveillance of the 3701 and 3709 buildings and surrounding property for some time. The surveillance also included the surrounding neighborhood, which Sgt. Engles described as a commercial area with numerous buildings similar to a small business park. During the months prior to January 10, 2007, the Santa Fe Impact team had received many complaints about stolen vehicles and had located a "chop shop" at a nearby location on South Bryant. The area was suspected to be one in which illegal activity relating to drugs and stolen property was common. The January 10, 2007 search was conducted pursuant to a warrant after Sgt. Engles received a report from Sgt. Geery that a large electric hoist could be seen through the open garage door of 3701. Sgt. Engles had received a report of a stolen hoist matching the item observed by Sgt. Geery; he subsequently obtained the search warrant which resulted in the January 10, 2007 search[6]. His affidavit for the warrant was admitted into evidence as Defendant's Exhibit 3.0; the search warrant was admitted into evidence as Defendant's Exhibit 3.1.

---

[6]*According to Sgt. Engles, the hoist was among the items retrieved during the January 10, 2007 search, and it was identified by the owner as the item reported as stolen.*

Sgt. Engles testified that, in March 2006, he went to the 3701 building to attempt to arrest a suspect whose fingerprints had been found on a stolen vehicle recovered from the parking area outside the 3701 and 3709 buildings. After obtaining an arrest warrant, Sgt. Engles conducted surveillance of the 3701 and 3709 buildings; the suspect was observed in the building area. At about 8:00 p.m. on March 29, 2006, Sgt. Engles went to 3701 to apprehend and arrest the suspect. When Sgt. Engles arrived, Defendant was inside the door of 3701; Engles asked Defendant if the subject of the arrest warrant was on the premises. Defendant said he did not think so, but he gave Sgt. Engles permission to search the 3701 and 3709 buildings[7].

Sgt. Engles also testified that, on December 18, 2006, he had arrest warrants for Defendant and his father based on the alleged theft of a backhoe. He arrested Defendant as Defendant was parking his truck in the area behind the 3701 building.

Brooke Jobe testified that she was Defendant's girlfriend for a period of several months prior to the January 10, 2007 search and that they lived together during this time period. According to Jobe, she and Defendant slept in an old recreational vehicle ("RV") located inside the 3709 building. Because the RV did not have functioning plumbing or running water, they went next door to the 3701 building to use the bathroom and take showers. According to Jobe, she and the Defendant spent most of their time in the 3701 building; she and Defendant used methamphetamine on a daily basis, and spent time in the break room in the 3701 building, where there was a television, microwave, refrigerator, and chairs and couches. Jobe also testified that Defendant had access to all areas of the 3701 building. The only portion that Jobe recalled being locked was

---

[7]*Before the search was completed, the fugitive was observed outside the building, and Engles did not further search the buildings at that time.*

the interior office of Defendant's father, Guy Rivers; the office was was usually locked when Guy Rivers was not present. However, Jobe testified that Defendant had access to the office when his father was on the premises.

Davey Ketner, a convicted felon and paid informant for the Bureau of Alcohol, Tobacco and Firearms, testified that had known Defendant for several years and had spent considerable time with Defendant at the 3701 and 3709 buildings before Ketner's arrest in December of 2005. According to Ketner, Defendant had access to all areas of the premises of the 3701 building. Ketner testified that the only area which was not always accessible was the interior office of Guy Rivers, who kept that office locked when he was not on the premises. Ketner testified that, although Defendant spent time in the 3709 building, Defendant used the showers and bathroom in 3701 and that they spent time together in the break room located in 3701.

A diagram depicting a floor plan of the 3701 building and showing it to be approximately 6,000 square feet was admitted as Government Exhibit B1.2. A second, more detailed diagram of the 3701 building was admitted as Government Exhibit B1.3. Exhibit B1.3 shows the front of the 3701 building; on the East side, there is a wide garage-style door. Photographs of the building show the front of the building, the door, and a sign above the door labeled, "Electric Motor Company." Government Exhibits B1.0 and B1.1. There is also a small door adjacent to the garage door; no windows are shown in the photographs or the diagrams of the 3701 building. According to the testimony of Sgts. Engles, Moon, and Geery, the 3709 building is also a shop and warehouse. The diagram admitted as Government Exhibit B1.3 also shows the location of the 3709 building on the South side of 3701; the diagram also shows that each building has a door on the side adjacent to the other building. According to the testimony of Sgt. Engles, there is a worn pathway between the

buildings, and it leads from the door of 3709 to the door of 3701; the pathway between the buildings is marked on the diagram admitted as Government Exhibit B1.3. The diagram also shows that the distance between the 3701 and 3709 buildings is approximately 10 to 15 feet. *Id.*

In the affidavit he executed to obtain the January 10, 2007 search warrant, Sgt. Engles also provided information indicating that Defendant was a joint occupant of the 3701 building. A copy of the affidavit was admitted as Defendant's Exhibit 3.0. In the affidavit, Sgt. Engles stated that he had been told by a confidential informant that Defendant's father, Guy Rivers, described the 3701 building as "our shop." Defendant's Exhibit 3.0, p. 2. The affidavit also referenced the fact that Guy Rivers told the informant that, at the time police were on the premises recovering the back hoe and trailer, Defendant was in the act of stealing a chain hoist. *Id.* During the January 10 search, the stolen chain hoist was among the items recovered. Defendant's Exhibit 3.2, Item No. 12.

The Court concludes that the foregoing testimony establishes beyond a reasonable doubt that Defendant was a joint occupant of the 3701 building at all times relevant to this case. The evidence also establishes beyond a reasonable doubt that he had access to all portions of the interior of the 3701 building. The certificates of title to his personal vehicles and a vehicle jointly owned with his father reflect that Defendant listed 3701 S. Bryant as his address. In addition, the testimony of the witnesses establishes that Defendant was regularly present at the 3701 building and that his conduct toward police officers indicated his authority over the premises. Although there is evidence that he slept in the 3709 building, there is undisputed evidence that he regularly used the restrooms, showers, and break room located in 3701 and spent most of his time in the 3701 building. The testimony of the witnesses also reflects that the law enforcement officers who conducted surveillance of 3701, 3709 and the surrounding areas rarely, if ever, saw Guy Rivers on the

premises. According to the undisputed testimony of the law enforcement officers, Defendant was the person with whom they dealt when entering the 3701 building. The building diagrams introduced as exhibits establish the proximity of the two buildings and corroborate the testimony of the officers.

The evidence also establishes beyond a reasonable doubt that Defendant had unrestricted access to all portions of the 3701 building other than the interior office of Guy Rivers when that office was locked. However, the firearms at issue in this case were not located in his father's office; thus, even if the Court concluded that his access to that portion of the building was restricted, that conclusion does not preclude a finding that Defendant was a joint occupant of the 3701 building and that he had unrestricted access and the opportunity to exercise control over all other areas of the 3701 building.

That Defendant was a joint occupant having constructive possession of and the ability to control the 3701 building premises does not, however, end the inquiry. Because the Remington and Ruger rifles were found within a locker and secured by a lock, the Court must also determine whether the evidence is sufficient to establish that Defendant had constructive possession of the firearms. That determination requires proof beyond a reasonable doubt that Defendant had constructive possession of the firearms; to make that determination, the Court must find that the evidence establishes that Defendant had knowledge of the firearms and access to them. *See, e.g., Mills*, 29 F.3d at 550; *Colonna*, 360 F.3d at 1179.

c. Whether Defendant had knowledge of the firearms:

The evidence at trial establishes that Defendant owned the Remington rifle and that he was aware there were other firearms in the 3701 building. Delbert Knopp, a retired agent with the

11

Bureau of Alcohol, Tobacco and Firearms ("ATF") who currently is an investigator for the Oklahoma County District Attorney, interviewed Defendant at the Oklahoma County jail on June 29, 2007.  At the time, Defendant was incarcerated on the state charges resulting from the January 10, 2007 search of the  3701 and 3709 buildings; he told Knopp that he had reached a plea agreement on the state charges.  Knopp advised  him of his *Miranda*[8] rights, and Defendant waived those rights.  A copy of the waiver was admitted as Government Exhibit C5.0.  Knopp testified that he interviewed Defendant because he had been informed that Defendant had sold methamphetamine to an undercover ATF agent; Knopp  wanted to find out if Defendant would identify other drug dealers.  Knopp told  Defendant that Defendant  had been reported as having sold drugs to an undercover ATF agent.   Defendant denied that he had sold drugs, but admitted purchasing methamphetamine.  Knopp then  told Defendant that some guns had been found during the January 10, 2007 search of the 3701 building; Knopp did not describe the specific guns that had been recovered.  Without further comment from Knopp, Defendant stated  that the Remington rifle belonged to Defendant and had been given to him  as a high school graduation gift[9]; Defendant said the other guns found at the 3701 building belonged to his father.

The testimony also establishes that the Remington rifle is considered a valuable firearm. Joe Davis,  the owner of C&J Sporting Goods in Bethany, Oklahoma, testified that he sold the Remington rifle to Defendant's mother,  Lynda Rivers, on December 16, 1998.   He identified Government Exhibit C6.0 as the  form reflecting the sale of the Remington rifle to Lynda Rivers on

---

[8]*Miranda v. Arizona,*384 U.S. 436, 444-445 (1966).

[9]*During his opening statement at trial, Defendant's counsel also told  the Court that the evidence would show that the Remington rifle was a high school graduation gift to Defendant from his parents.*

that date. Davis also testified that the Remington rifle had been specially ordered at the customer's request because it was a more expensive rifle than he normally kept in stock. He estimated that its current retail value is approximately $700 to $800.

That Defendant was in possession of guns prior to January 10, 2007 was also established by the testimony of Darrell Edwards, an undercover agent for the Bureau of Alcohol, Tobacco and Firearms ("ATF"). Edwards testified that he purchased methamphetamine from Defendant at the residence of Shannon Short on December 13, 2006. Edwards taped his conversation with Defendant on that date, and the recording was played at the trial. Although most of the recorded conversation related to the drug transaction, Edwards and Defendant also discussed guns and Edwards' interest in purchasing guns. On the tape recording, Edwards is heard asking if Defendant has guns for sale, and Defendant responds, "I've got a couple of guns, but not ones I really want to sell." The recording was admitted as Government Exhibit C4.0.

According to Davey Ketner, during the several years in which he and Defendant were friends and spent time together, Defendant owned several guns. Ketner testified that Defendant was an avid hunter who often talked about rifles and that Defendant usually had a firearm in his truck. Ketner recalled one occasion when Defendant fired an automatic firearm into the wall of the 3709 building.
Although Ketner testified that he regularly spent time with Defendant at the 3701 and 3709 buildings and was there several times a week, he also testified that his contact with Defendant ended when Ketner was arrested in December of 2005. Ketner was subsequently incarcerated, and he has not visited the 3701 or 3709 buildings since December 2005.

The Court concludes that the evidence shows that Defendant not only owned the Remington

rifle but that he was aware of other firearms. With respect to the Remington rifle, the undisputed evidence establishes that it was a valuable gift from his parents; there was no evidence to suggest that he relinquished possession of it at any time prior to January 10, 2007. In fact, he told Delbert Knopp on June 29, 2007 that he owned the Remington rifle and that the other guns in the 3701 building belonged to Defendant's father. In addition, Defendant's taped December 13, 2006 conversation with ATF Agent Edwards establishes that, at a minimum, he had knowledge of firearms, as he said he had guns but did not really want to sell them.

d. Whether Defendant had access to the firearms in the lockers at 3701:

Defendant's knowledge of the firearms is not, without more, sufficient. The government is also required to prove that he had access to the firearms found in the locked wall lockers at 3701.

Sergeants Engles, Geery and Moon testified that the Remington and Ruger rifles were found inside a locker in the 3701 building. The diagram admitted as Government Exhibit B1.3 shows the location of the lockers. The diagram depicts the area in the Southeast corner of the 3701 building labeled as "Bathroom & Shower;" adjacent to that room is an area marked "Break Area." On the wall outside the bathroom and shower area, the diagram shows wall lockers. Government Exhibit B 1.3. These are located near the South exterior wall of the 3701 building. *Id.* According to the testimony of Sgts. Moon, Engles and Geery, the Remington and Ruger rifles were found in those lockers.

Sgt. Moon testified that he found the rifles while searching the lockers in the 3701 building. According to Sgt. Moon, the lockers were wall lockers, and he described them as the type commonly found in schools. He testified that the lockers were constructed of thin metal. There were small key locks on the lockers, but Sgt. Moon opened them easily with a screw driver.

According to Sgt. Moon, the Remington and Ruger rifles were found in one locker; each was inside a gun case which he described as a hunting gun style case. He testified that the locker also contained some clothing and boots. According to Sgt. Moon, the other lockers located adjacent to the one in which the two rifles were found contained men's clothing. Sgt. Moon also testified that, in the 3701 building, there were many tools readily accessible to anyone on the premises.

Brooke Jobe testified that she was familiar with the lockers outside the bathroom and shower in the 3701 building. Jobe testified that Defendant had access to those lockers, and used them to store belongings. She did not know of any restrictions on access to them. She did not recall having seen guns in the lockers and did not ever see Defendant with a gun. Although she vaguely recalled hearing comments by Defendant about guns, she had no clear recollection of those conversations.

Davey Ketner also testified that he was familiar with the lockers located outside the bathroom and shower area of the 3701 building. He testified that Defendant used those lockers to store his clothing and personal belongings. Ketner further testified that, during the time period in which he was regularly inside the 3701 building prior to Ketner's December 2005 arrest, the lockers were not always locked. He also testified that he recalled seeing rifles and a handgun in the lockers, although he did not recall the type of rifles and could not state whether he saw the Remington and Ruger rifles in the locker.

According to the testimony of Sgt. Engles, who prepared the Return and Inventory of items retrieved during the January 10 search, no keys of any kind were found in the search of 3701 and 3709 or the exterior premises. No keys were found on Defendant's person when he was arrested following the search. Several other individuals were arrested at the premises following the January

10, 2007 search of the buildings, and no keys were recovered.

The parties have not submitted legal authority[10] addressing the question of constructive possession in circumstances involving locked compartments to which a defendant did not actually have possession of a key on his person at the time the contraband was discovered. The Court has located no Tenth Circuit decision directly addressing this question. However, the Circuit decisions involving constructive possession of a firearm within a compartment hold that the government must prove beyond a reasonable doubt that the defendant had both knowledge of the existence of the firearms and access to the compartment. *Mills*, 29 F.3d at 550. The proof in *Mills* was insufficient because the firearms in that case had been placed in a compartment underneath a table; the evidence established that another person placed them there without the defendant's knowledge. *Id.* The absence of knowledge precluded a finding that the defendant constructively possessed the firearms. *Mills*, 29 F.3d at 550.

In contrast, the evidence in this case creates at least a plausible inference that Defendant knew the rifles were in the locker. That the locker was secured by a lock does not preclude a finding that he had access to the two rifles, because the evidence establishes that the lockers were easily opened with a screwdriver and that Defendant had access to many tools in the 3701 building. The Court has located no decision from this or other circuits in which the court held that constructive possession cannot be found where the defendant lacks a key to a compartment which could be accessed by other means. In fact, the Eighth Circuit has held that constructive possession was proven where guns belonging to the defendant's brother were located in the locked basement of the defendant's residence. *United States v. Balanga*, 109 F.3d 1299 (8th Cir. 1997). In *Balanga*,

---

[10]*The Court did not require the parties to submit trial briefs, but authorized them to do so in advance of trial. The government filed a trial brief, but Defendant did not submit a trial brief.*

the defendant argued that, although he knew his brother had stored possessions including a gun in his basement, he could not constructively possess the gun because he did not have a key to the padlocked basement door. 109 F.3d at 1301. The Court noted that the testimony regarding his possession of a key was conflicting. However, the Court determined that, even if the evidence showed he had no key, that did not necessarily prevent him from accessing the basement by other means, including the use of a locksmith or merely cutting the padlock. *Id.,* n 4.

Further, the evidence in the instant case established that the contents of Guy Rivers' internal office in the 3701 building, which was usually locked when Guy Rivers was not on the premises, were accessible to Defendant when Guy Rivers was present. A shotgun and ammunition were recovered from Guy Rivers' office. Thus, even if Defendant in fact did not have a key to the locker where the rifles were found, it logically follows that Defendant could have accessed the locker when Guy Rivers was present. However, perhaps the most compelling evidence of Defendant's ability to access the rifles in the 3701 building is his own words to undercover agent Darrell Edwards less than one month before the January 10 search: "I've got a couple of guns, but not ones I really want to sell." Such a statement would not be expected unless Defendant knew the location of the two rifles and knew he had access to them.

Thus, the Court concludes that Defendant had access to the rifles found in the wall locker in the 3701 building. Defendant's knowledge of, and access to, the rifles amounts to constructive possession sufficient to sustain a conviction of a violation of 18 U. S. C. § 922(g)(1). *Norman*, 388 F.3d at 1340-41. In light of the parties' stipulation which establishes the remaining two elements of the offense, the Court concludes that the government has met its burden of proof beyond a

reasonable doubt in this case, and finds Defendant guilty of Count 3 of the Indictment.

IT IS SO ORDERED this  17th   day of April, 2008.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE